**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **No. 1:16-cr-199** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **MICHAEL HOLMES** | : | |
| | : | |

## MEMORANDUM

Before the Court is Defendant Michael Holmes' motion to suppress evidence pursuant to the Fourth Amendment to the United States Constitution. (Doc. No. 26.) For the following reasons, the Court will deny Defendant's motion.

## I.    BACKGROUND

On January 30, 2017, the Court conducted a suppression hearing on Defendant's Fourth Amendment claim. At that hearing, the Government offered the testimony of Officers Chad McGowan, Matthew Novchich, and Brandon Yeager of the Harrisburg Police Department as to the events surrounding the stop of Defendant's vehicle during the night of January 16, 2016, and offered six exhibits into evidence. Defendant testified on his own behalf and offered the testimony of Monique Serino, an investigator in the Federal Public Defender's Office.

### A.    Factual Background

On January 16, 2016, at approximately 1:20 a.m., Officer Chad McGowan and Officer Matthew Novchich were dispatched to 1353 Vernon Street in Harrisburg, PA, upon report of a domestic disturbance. (Tr. at 6: 2-7.) Both officers were dressed in full police uniform, and were driving a fully marked Harrisburg City Police vehicle. (Id. Tr. at 6: 8-12; 36: 25; 37: 1.) Officer Brandon Yeager also responded to the domestic disturbance call. (Id. Tr. at 6: 16-18; 51:

21-24.)

While the three officers were on the porch of 1353 Vernon Street speaking with a male individual,[1] Officer McGowan heard a loud "crunch sound that happened, originated right behind me, right to my north."  (Id. Tr. at 7: 2-5; 37: 4-19.)  He described it as "the sound of a vehicle hitting another vehicle," based on his four-year experience as a police officer and 14 years experience as a driver.  (Id. Tr. at 7: 6-10.)  After hearing the noise, Officer McGowan turned around and observed one vehicle driving on Vernon Street at the time, a navy blue Chevrolet Impala, which he described as "just passing our position."  (Id. Tr. at 7: 11-14.)  Simultaneous with the "crunch" sound, Officer McGowan heard and observed a vehicle car alarm activate.  (Id. Tr. at 7:  15-18.)  Accordingly, Officer McGowan believed that the blue Chevrolet Impala had struck a parked car on Vernon Street.  (Id. Tr. at 7: 20-22.)

Officer Novchich heard a "loud bang or crunching sound" coming from behind them while the officers were on the porch, and turned around to see a dark blue sedan moving up the street.  (Id. Tr. at 37: 17-21.)  Like Officer McGowan, and "based upon being in the city for four-plus years investigating accidents and hearing many accidents happen in front of me," Officer Novchich concluded that the sound he heard was a vehicle striking another vehicle.  (Id. Tr. at 37: 22-25;  38: 1.)  He believed that the dark blue sedan had hit the driver's side of a minivan parked in front of 1353 Vernon Street.  (Id. Tr. at 38: 18-22.)

Similarly, while speaking with the individual on the porch of 1353 Vernon Street, Officer Yeager "heard a motor vehicle collision directly behind me," then "spun around to see a blue-in-

---

[1] The individual that was the subject of the domestic disturbance call lived in Apartment 2, the upstairs apartment, at 1353 Vernon Street.  (Id. Tr. at 52: 4-9.)

color Chevrolet sedan that was traveling eastbound on Vernon Street." (Id. Tr. at 52: 10-13.)  He

stated that he had heard the sound multiple times before, and that it "sounded like mirror contact

on the vehicle.  I believe the passenger side mirror would have made contact with the parked

vehicle."  (Id. Tr. at 52: 16-20.)

　　　　While still on the porch, Officer Novchich advised county dispatch of the fact that a hit

and run accident had occurred in front of the officers, and offered a description of a navy blue

sedan traveling eastbound on Vernon Street.  (Id. Tr. at 39: 17-21; 53: 4-6.)  At that time, Officer

Yeager called out the license plate information of the suspect vehicle over the radio.  (Id. Tr. at

39: 23-24; 53: 6.)

　　　　After ascertaining that Officer Yeager was comfortable being left by himself at the scene

of the domestic disturbance, Officers McGowan and Novchich made the decision to get in their

police vehicle and attempt to initiate a traffic stop of the vehicle driving up Vernon Street. (Id.

Tr. at 39: 5-11.)  Neither Officer McGowan nor Officer Novchich stopped to examine the car

they believed to have been hit. (Id. Tr. at 45: 22-25;  46: 1.)

　　　　Officer Yeager stayed on the scene to complete the investigation of the domestic

disturbance at 1353 Vernon Street.  (Id. Tr. at 53: 7-9.)  He also checked on the vehicle that the

officers believed had been struck, and relayed the tag information, make, and model of the

vehicle to county dispatch over the radio.  (Id. Tr. at 53: 10-14.)  Officer Yeager identified the

owner through its registration and attempted contact with the owner, who lived on the first floor

at 1353 Vernon Street.  (Id. Tr. at 53: 16-25.)  No one answered the door, despite the fact that

someone looked out the window when he knocked.  (Id. Tr. at 54: 3-5.)  Officer Yeager could

not recall seeing any damage to the vehicle, and did not complete a report for the incident.  (Id.

Tr. at 54: 12-14.)  He "confirmed that that was the vehicle that was struck, whether it was by seeing the damage or when I spun around, that was the vehicle that was directly beside the striking vehicle." (Id. Tr. at 54: 15-17.)

Officers McGowan and Novchich followed the blue Chevrolet Impala from Vernon Street, onto 15th Street, and then onto Derry Street, ultimately stopping the vehicle in the 1400 block of Derry Street.[2]  (Id. Tr. at 10: 23-25; 11: 1-18.)  While Officer McGowan drove the police vehicle in pursuit of the blue Chevrolet Impala,  Officer Novchich handled the radio transmission in the car.[3]  (Id. Tr. at 8: 22-25;  9: 1-13.)

When the blue Chevy Impala stopped south of 15th Street on Derry Street, Officer McGowan approached the vehicle on the driver's side, and observed the smell of marijuana emanating through the open front driver-side window.  (Id. Tr. at 12: 12-20.)  At about the same time, Officer Pierce, who was driving the Harrisburg City Police transport van that night and was on the scene, indicated to the officers over the police radio that he observed the front seat female passenger in the vehicle moving and reaching around inside the vehicle.  (Id. Tr. at 12: 21-25; 13:  1-2.)

Upon hearing Officer Pierce's observation, Officer McGowan removed the driver, Defendant Michael Holmes, from the vehicle.  (Id. Tr. at 14: 14-20.)  After Defendant Holmes

---

[2] The Government introduced into evidence two maps, Government Exhibits 8 and 8a, demonstrating the path of the cars.  (Id. Tr. at 10: 12-25; 11: 1-25; 12: 1-8.)

[3] The recording of the officers' radio transmissions during the relevant period of the night of January 16, 2016 was introduced into evidence as Government Exhibit 9.  (Id. Tr. at 9: 3-4.) The recording includes the voice of Officer Novchich stating "I have a hit and run on Vernon Street."  (Id. Tr. at 9: 8-13.)  The recording also includes the voice of Officer Yeager stating "It's a blue Chevy Impala," and providing a license plate number.  (Id. Tr. at 9: 14-20.)

exited the car, Officer McGowan questioned him as to whether he had any marijuana on his person, and he replied that he did not.  (Id. Tr. at 15: 1-7.)  After receiving consent, Officer McGowan searched Defendant Holmes and discovered a large plastic baggie inside of his jeans pocket, which contained 11 additional small knotted plastic baggies containing a green leafy substance consistent with marijuana.  (Id. Tr. at 15: 7-16.)  Officer McGowan instructed Defendant Holmes that he was being placed under arrest, and seated him in the back of Officer Pierce's transport van.  (Id. Tr. at 15: 18-20.)  During the search of Defendant Holmes, Officer McGowan heard his partner Officer Novchich announce that he had recovered a firearm from the vehicle.  (Id. Tr. at 15: 24-25; 16: 1-3.)

The front seat female passenger of the vehicle was identified as Ienisha Bartow, and there were two backseat passengers as well, Jessica McKinney and Josephine Booher.  (Id. Tr. at 16: 11-22.)  Officer Novchich approached the vehicle on the passenger side and observed Ms. Bartow opening the door and attempting to get out of the car.  (Id. Tr. at 40: 18-25; 41: 1-12.)  At some point, Officer Novchich removed her from the car.  (Id. Tr. at 41: 20-23.)  When she started getting out of the car, he smelled an odor of marijuana coming from her person.  (Id. Tr. at 41: 23-25.)  Ultimately, he found a small knotted baggie of marijuana in her right pants pocket.  (Id. Tr. at 42: 17-19.)  He then searched the vehicle, and found a small semiautomatic pistol sitting on the floor board in the rear of the vehicle, next to the middle bar that separates the driver's side and passenger's side.  (Id. Tr. at 42: 23-25; 43: 1-3.)

Officer McGowan questioned Ms. Bartow, who told him that she had advised Defendant

that he had struck a vehicle, and that she had observed the police on the scene at the time.[4]  (Id. Tr. at 17: 11-15.)  Officer McGowan reported that Ms. Bartow further stated that after the officers activated the overhead lights on the police vehicle to initiate the traffic stop, the Defendant threw the gun on her lap.  (Id. Tr. at 17: 16-19.)  He also testified that Ms. Bartow stated that she became nervous, as she did not want to get in trouble with the police, so she eventually threw the gun in the second row of the vehicle.  (Id. Tr. 17: 19-22.)

Officer McGowan interviewed Ms. Bartow a second time at the Dauphin County Judicial Center, where she provided a written statement, introduced as Government Exhibit 2.[5]  (Id. Tr. at 17: 23-25; 18: 1-12.)  Officer McGowan read part of her statement, which represented that "We got to Vernon Street.  I see two cops going down Vernon.  Mike hit a car in front the cops.  The car go off the mirror on my passenger side, went in.  We turned on 15th Street."[6]  (Id. Tr. at 19: 8-11.)  Officer McGowan ultimately charged Defendant with the offense of "Accidents Involving Damage to Unattended Vehicle or Property."[7],[8]  (Id. Tr. at 20: 24-25; 21: 1-5.)

_____

[4] Counsel for Defendant Holmes objected to Officer McGowan's testimony regarding Ms. Bartow's statements on the basis that the testimony constituted hearsay.  The Court overruled the objection.  (Id. Tr. at 17: 5-6.)

[5] Defense counsel continued its hearsay objection to the presentation of Ms. Bartow's written statement.  (Id. Tr. at 18: 13-17.)

[6] Government Exhibit 2 was admitted into evidence over the hearsay objection lodged by Defense counsel.  (Id. Tr. at 19: 15-19.)

[7] The Government introduced its Exhibit 7, which is a criminal complaint lodged against Defendant Holmes filed in the Dauphin County Court of Common Pleas, charging him with several offenses arising out of the events of January 16, 2016, including firearms and drug offenses, as well as a violation of 75 Pa.C.S. § 3745(a), "Accidents Involving Damage to Unattended Vehicle or Property." (Id. Tr. at 20: 14-25; 21: 1-9.)

[8] Officer McGowan offered further testimony regarding Government Exhibit 6, an event chronology provided by Dauphin County Dispatch regarding the night in question.  (Id. Tr. at

Upon cross-examination, Officer McGowan admitted that the audio recording from his police car did not reflect the sound of a car alarm going off.  (Id. Tr. at 24: 4-6.)  He further affirmed that the block of Vernon Street in question is "not well cleaned up," often with bottles and cans lying around.  (Id. Tr. at 25: 17-22.)  Officer McGowan did not stop to observe any damage to the car on Vernon Street after the incident, nor did he recall noticing any damage to the Defendant's car.  (Id. Tr. at 29: 13-14;  30: 23-25; 31: 1-3.)  Officer McGowan clarified that he stopped Defendant Holmes as a result of what he heard, and the fact that Defendant's car fled the accident scene.  (Id. Tr. at 30: 8-15.)  As to the car alarm, he clarified that he saw lights begin to flash on the vehicle that he believed had been struck by Defendant's car.  (Id. Tr. at 31: 6-12.)

Upon cross-examination, Officer Novchich similarly confirmed that Vernon Street was "very filthy," and at any time, may have bottles or cans lying on it.  (Id. Tr. at 46:  7-8.)  He also confirmed that Defendant Holmes did not break any traffic laws while driving away from the scene of the accident.  (Id. Tr. at 48:  2-5.)

Defendant Holmes also described the events of the night of January 16, 2016.  He stated that he was driving to Double D's bar and lounge on Swatara Street by way of Vernon Street.  (Id. Tr. at 61: 2-7.)  He noted that he turned left from Market Street onto 13th and Vernon Street, and proceeded to the stop sign, where he stopped and adjusted the music in his vehicle.  (Id. Tr. at 61: 6-9.)  Upon questioning by the Court, Defendant stated that the music was not "booming

---

21: 21-25; 22: 1-17.)  Officer McGowan testified that the dispatch center attempts to log every transmission that is conducted via police radio, and from that log, create an event sheet, indicating unit status, location, and comments relayed to the dispatch center.  (Id. Tr. at 22: 6-11.)

loud." (Id. Tr. at 65: 7-8.)  He then proceeded down Vernon Street to the intersection with 15th

Street, where he realized that a patrol car was following him.  (Id. Tr. at 61: 13-15.)  He turned

onto 15th Street and proceeded towards Derry Street, and pulled his car over after the patrol car

initiated its traffic lights.  (Id. Tr. at 61:  15-17.)  He stated that he did not hit a car while driving

on Vernon Street. (Id. Tr. at 61:  22-25.)  He further stated that there was no damage to the car he

was driving, which belonged to his sister.  (Id. Tr. at 62:  3-7.)  Upon cross-examination,

Defendant Holmes admitted that he had been at a bar prior to driving on Vernon Street, where he

had one beer.  (Id. Tr. at 62:  22-25;  63:  1-2.)  He stated that he did not use any marijuana at the

time he was driving, although he had "maybe that day."  (Id. Tr. at 63:  6-10.)

        Monique Serino, an investigator in the Federal Public Defender's Office, testified that

she attempted to locate the van that the officers believed was struck by Defendant's vehicle that

evening.  (Id. Tr. at 65:  18-25; 66:  15-19.)  She located Ruth Pierce, the owner of the vehicle

identified by the officers, who resided at 1353 Vernon Street.  (Id. Tr. at 66: 25; 67: 1-4.)  Ms.

Serino testified that, when she interviewed Ms. Pierce in October and December of 2016, she

reported that she no longer owned the vehicle in question, and that the vehicle was not damaged.

(Id. Tr. 67: 2-10; 68: 7-12.)  Ms. Serino also testified that, when she conducted her investigation,

she observed a plastic bottle and a beer can on Vernon Street, and placed the beer can in the

middle of the street.  (Id. Tr. at 67: 18-20.)  She stated that she witnessed a car pass by and crush

the beer can, which caused a "loud noise."  (Id. Tr. at 67: 22-24.)

### B.    Procedural Background

        On July 20, 2016, Defendant Michael Holmes was charged by Indictment with (1) Felon

in Possession of a Firearm in violation of 18 U.S.C. § 922(g); (2) Possession with Intent to

Distribute Marijuana in violation of 21 U.S.C. § 841(a)(1)(2); and (3) Possession of a Firearm in

Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(c).  (Doc. No. 1.)   On August 8,

2016, Defendant entered a plea of not guilty.  (Doc. No. 10.)

On January 4, 2017, Defendant filed a motion to suppress all evidence resulting from the

stop of his vehicle on the night of January 16-17, 2016.  (Doc. No. 26.)  On that same date,

Defendant filed a brief in support of his motion.  (Doc. No. 27.)  On January 13, 2017, the

Government filed a brief in opposition to Defendant's motion to suppress.  (Doc. No. 28.)  On

January 30, 2017, the Court conducted a suppression hearing.  (Doc. No. 33.)  Accordingly,

Defendant's motion to suppress is now ripe for disposition.

## II.    LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects the public against

"unreasonable searches and seizures."  U.S. Const. amend. IV.  "Generally, for a seizure to be

reasonable under the Fourth Amendment, it must be effectuated with a warrant based on

probable cause."  United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002) (citing Katz v.

United States, 389 U.S.347, 356-57 (1967)).  However, under an exception to the warrant

requirement established by Terry v. Ohio, 392 U.S. 1 (1968), "an officer may, consistent with the

Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable,

articulable suspicion that criminal activity is afoot."  United States v. Torres, 534 F.3d 207, 210

(3d Cir. 2008) (internal quotations omitted).  "Any evidence obtained pursuant to an

investigatory stop (also known as a 'Terry stop' or a 'stop and frisk') that does not meet this

exception must be suppressed as 'fruit of the poisonous tree.'"  Id. (quoting United States v.

Brown, 448 F.3d 239, 244 (3d Cir. 2006)).

## III.     DISCUSSION

In moving to suppress all evidence resulting from the stop of his vehicle on the night of January 16, 2016, Defendant Holmes argues that the officers who stopped his vehicle had no reasonable suspicion to believe that he had violated a traffic law or was currently engaged in any criminal conduct.  (Doc. No. 26 at 2.)  In response, the Government maintains that the officers had reasonable suspicion to believe that Defendant Holmes had committed a traffic violation, specifically, that he struck a parked vehicle on Vernon Street and left the scene.  (Doc. No. 28 at 8-9.)

The Third Circuit has held that "the Terry reasonable suspicion standard applies to routine traffic stops."  United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006).   In determining whether an officer possessed reasonable suspicion to conduct a traffic stop, courts must consider the totality of the circumstances, in light of the officer's experience.  United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) (citation omitted).  The Supreme Court's decision in Whren v. United States, 517 U.S. 806, 813 (1996), clarified that the constitutional reasonableness of a traffic stop does not depend on the subjective motivations of the officers involved, and "established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." United States v. Mosley, 454 F.3d 249, 252 (3d Cir. 2006).

As the Third Circuit Court of Appeals stated in Delfin-Colina:

> Terry and Whren stand for the proposition that a traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop.  In other words, an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place.

464 F.3d at 398.  If a valid traffic stop is initiated, "an officer who develops a reasonable,

articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason

for the stop, and detain the vehicle and its occupants for further investigation."  Givan, 320 F.3d

at 458 (citation omitted).

Here, three experienced Harrisburg City Police officers credibly testified that on the night

in question, as the Defendant's car was passing a parked car on Vernon Street directly behind

their location, they heard a loud noise that all three immediately identified as the sound of a

vehicle striking another vehicle, based on their experience.  Further, they immediately

communicated their belief that a hit and run accident had occurred to the county dispatcher via

radio, offering a description of the car and its license number.  Accordingly, Officers McGowan

and Novchich initiated a traffic stop of Defendant's vehicle.

Testimony offered by Defendant Holmes seeks to establish that on the night in question,

his vehicle did not strike a parked car on Vernon Street, but instead struck a can or bottle that

may have littered the street, causing a loud noise that may have sounded like the collision of two

vehicles.  He testified that he did not strike a vehicle on Vernon Street, and further, that there

was no damage to the car he was driving.  He also offered the testimony of Investigator Monique

Serino in an effort to establish that the car allegedly struck suffered no damage, and that the loud

noise heard by the officers might have been caused by a car driving over a beer can lying in the

street.

However, given the fact that "an officer need not be factually accurate in her belief that a

traffic law had been violated but, instead, need only produce facts establishing that she

reasonably believed that a violation had taken place," Defendant's efforts to establish that no

collision took place are beside the point.  <u>Delfin-Colina</u>, 464 F.3d at 398.  Whether or not

Defendant Holmes' vehicle actually struck a parked car on Vernon Street on the night in

question, the Government need only produce facts establishing that the officers initiating the

traffic stop <u>reasonably believed</u> that Defendant's vehicle struck a parked car on Vernon Street

and left the scene.  Upon consideration of the testimony offered at the suppression hearing, the

exhibits introduced into evidence, and the briefs of the parties, the Court finds, viewing the

totality of the circumstances, that the Government has produced facts establishing the

reasonableness of the officers' belief that a hit and run accident had taken place  That is all that

is constitutionally required.

IV.     **CONCLUSION**

      Accordingly, for the reasons stated above, the Court will deny Defendant's motion to

suppress evidence under the Fourth Amendment.  (Doc. No. 26.)  An order consistent with this

memorandum follows.


    s/ Yvette Kane_____
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania